IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTOPHER-MICHAEL WILLIAMS,

        Plaintiff,

     v.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION, et al.,

        Defendants.

Civil Action 2:23-cv-1042
Judge James L. Graham
Magistrate Judge Kimberly A. Jolson

**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner at Chillicothe Correctional Institution ("CCI") who proceeds *pro se*, alleges that he was denied kosher meals, days off work for religious observation, and group bible study in violation of his constitutional rights under the First Amendment and his statutory rights under the Religious Land Use and Institutionalized Persons act, 42 U.S.C. § 2000cc ("RLUIPA). For the reasons below, it is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 20) be **GRANTED in part** and **DENIED in part.**

I.    BACKGROUND

Plaintiff brings claims against four defendants: religious services contractor Alfred Marcus, institutional inspector Corby Free, Warden Tim Shoop, and religious services administrator Mike Davis. (Doc. 19 at 2). These claims center on the denial of Plaintiff's request to eat daily kosher meals, have days off work for religious observance ("work proscriptions"), and participate in group bible study. (*Id.* at 7–8). Plaintiff says his religion is House of Yahweh and that his religion requires him to eat kosher meals. (Doc. 19-1; Doc. 19 at 13–14). Plaintiff also states that his religion shares holidays and other similarities with Orthodox Judaism. (Doc. 19 at 7–8, 13–14).

According to Plaintiff's Amended Complaint, he first requested daily kosher meals on January 24, 2022, when he submitted a religious accommodation form to prison officials. (Doc. 19-1). In February 2022, Defendant Marcus recommended that it be denied, because "the sincerity of [Plaintiff's] request cannot be adequately determined." (Doc. 19 at 3; Doc. 19-3). But in April 2022, Defendant Marcus apparently approved Plaintiff's request to participate in and eat kosher meals during Passover. (Doc. 19 at 3). But Plaintiff's daily kosher meal request was forwarded to the religious services administrator, Defendant Davis, for a final decision. (*Id.* at 5; Doc. 19-3). Defendant Shoop signed a form for the referral process to Defendant Davis. (Doc. 19-3; *see also* Doc. 19 at 4). Plaintiff never heard from Defendant Davis and never received approval to eat daily kosher meals. (Doc. 19 at 5). Instead, Plaintiff received vegetarian meals. (Doc. 19 at 14). Plaintiff submitted numerous grievances concerning his religious accommodation requests, and many were closed by Defendant Free. (*Id.* at 3–5; *see also* Doc. 19-2).

As for Plaintiff's work proscription and religious study accommodations, the pleadings are not clear on when Plaintiff first made these requests. The exhibits attached to the Amended Complaint are dated and show that the requests were likely made some time before January 2023. (*See* Doc. 19-2 at 12 (discussing Plaintiff's previous requests for work proscriptions and "all [his] religious requests")). Plaintiff alleges that these requests were never approved. (Doc. 19 at 7–8).

Plaintiff filed his Amended Complaint on November 16, 2023, after the Court directed him to clarify certain aspects of his original pleading. (*See* Docs. 1-1, 14, 18, 19). Defendants filed a Motion to Dismiss, arguing that Plaintiff's request for kosher meals is not religious in nature. (Doc. 20). The parties have fully briefed the matter, and it is ripe for review. (*See* Docs. 20, 23, 25, 26, 27).

## II. STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in favor of the plaintiff, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Consequently, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555). While the Court holds pleadings by *pro se* individuals "to less stringent standards than formal pleadings drafted by lawyers," the complaint must still "contain either direct or inferential allegations respecting all the material elements" of a plaintiff's claims to survive a motion to dismiss. *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (internal quotations omitted). In sum, although *pro se* complaints are construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## III. DISCUSSION

### A. Defendants' Motion to Strike

At the outset, the Court addresses briefing issues related to the Motion to Dismiss. Defendants filed a Motion to Strike Plaintiff's Final Response to Defendant's Motion to Dismiss (Doc. 29). Although the local rules do not permit the filing of memoranda other than a response and reply without leave of Court, the Undersigned notes that Plaintiff is proceeding *pro se* in this action. *See* S.D. Ohio Civ. R. 7.2; *see also Stepler v. Warden, Hocking Corr. Facility*, No. 2:12-

cv-1209, 2013 WL 3147953, at *2 (S.D. Ohio June 18, 2013) (considering a sur-reply because the plaintiff was *pro se*, even though the plaintiff did not file a motion for leave); *Nelson v. Jackson*, No. 2:12-cv-1167, 2013 WL 3812006, at *2 (S.D. Ohio July 18, 2013) (same). As such, the Undersigned will consider Plaintiff's "Final Response," and Defendant's Motion (Doc. 29) is **DENIED**.

### B. Section 1983 and RLUIPA

Turning to the merits of Defendants' Motion to Dismiss (Doc. 20), Plaintiff's Amended Complaint alleges claims against Defendants Marcus, Free, Shoop, and Davis under both Section 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

Plaintiff's Section 1983 claims are rooted in the First Amendment's free exercise clause. While prisoners have the right to religious exercise under the First Amendment, the right "may be subjected to reasonable restrictions and limitations" by prison officials. *Abdur-Rhaman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (internal citations omitted). As such, a prisoner bringing a claim that prison officials violated his right to exercise his religion must first establish that "the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (citing *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)). Then, the plaintiff must also establish that the defendant's behavior "infringes upon this practice or belief." *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987) (stating a plaintiff must plead (1) that the belief or practice is religious in the person's own scheme of things, (2) that it is sincerely held, and (3) that the challenged practice of the prison officials infringes on the religious belief). When pleading a Section 1983 claim, a plaintiff must also establish that each defendant was "personally involved in the activities which

4

form the basis of the alleged unconstitutional behavior." *Long v. Sloan*, No. 1:18-cv-1364, 2019 WL 4396079, at *7 (N.D. Ohio May 23, 2019).

Next, to sufficiently plead claims under RLUIPA, a prisoner must establish two prongs. First, the prisoner must again show that he seeks to coexercise a "sincerely held religious belief." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019) (internal citations omitted). Second, the prisoner must show that prison officials substantially burdened that religious practice. *Id.*; *see also Haight v. Thompson*, 763 F.3d 554, 559–60 (6th Cir. 2014) ("To establish a cognizable claim under RLUIPA, the inmate must first demonstrate that a prison policy substantially burdens a religious practice."). Prison officials' actions create a substantial burden when a prisoner is forced to "choose between following the precepts of [their] religion and forfeiting benefits or when the action in question place[s] substantial pressure on an adherent to modify [their] behavior and to violate [their] beliefs." *Barhite*, 377 F. App'x at 511 (internal quotations omitted). Similar to Section 1983 claims, plaintiffs raising claims under RLUIPA must also establish the personal involvement of each defendant. *Greenberg v. Hill*, 2:07-cv-1076, 2009 WL 890521, at *5–6 (S.D. Ohio Mar. 31, 2009).

The Undersigned addresses Plaintiff's claims against each defendant in turn.

C. **Defendant Marcus**

Plaintiff alleges both Section 1983 First Amendment and RLUIPA claims against Defendant Marcus for denying his kosher meal, work proscription, and bible study requests. (Doc. 19 at 8–9). Defendants argue that Plaintiff failed to establish that kosher meals are required by his religion. Defendants say that Plaintiff's desire to eat kosher meals is born out of a health preference and not a sincerely held religious belief. (Doc. 20 at 7–8). Defendants also note that the days identified in Plaintiff's work proscription requests are too vague to determine what days he seeks

5

time off work so he can participate in bible study. (*Id.* at 3; *see also* Doc. 19 at 8 (stating that Plaintiff seeks work proscriptions and group bible study on those days)). The Undersigned recommends that Plaintiff's claims against Defendant Marcus be dismissed, but for other reasons than those proposed by Defendants.

   **1. Kosher Meals**

For both of his claims against Defendant Marcus, Plaintiff must first establish that his desire to eat kosher meals stems from a sincerely held religious belief. Plaintiff says that his religion, House of Yahweh, requires him to eat "exactly as the Jews do," meaning he must have kosher meals. (Doc. 19 at 14). Plaintiff further alleges that these kosher meals must be made to certain standards and must be labeled as kosher by "Rabbi Priests," so the vegetarian meals he currently receives are not sufficient. (*Id.*). At this stage in litigation, Plaintiff has sufficiently pled that his request to eat kosher meals stems from a sincerely held religious belief. *Cf. Long*, 2019 WL 4396079, at *6 (granting a motion to dismiss where the prisoner's amended complaint did not say following kosher dietary laws were required by his religion but were instead needed to avoid negative health consequences); *Barhite*, 377 F. App'x at 510 (granting a motion to dismiss where the plaintiff did not allege that seized photographs were related to the practice of his religion).

Next, Plaintiff must also establish that Defendant Marcus was personally involved in the denial of his kosher meal request to succeed on either his Section 1983 or RLUIPA claim. On this front, though, Plaintiff's Amended Complaint is contradictory. Plaintiff asserts that Defendant Marcus granted Plaintiff's request to eat kosher meals during Passover but denied his request to eat kosher meals on a daily basis. (Doc. 19 at 9). At other points, Plaintiff seemingly says that Defendant Marcus only recommended that Plaintiff's request for daily kosher meals be denied and that the final decision rested with Defendant Davis. (*See* Doc. 19 at 3 (stating that Plaintiff's

6

request would be referred to a religious services administrator); 4 (stating that Defendant Marcus denied his religious accommodations request, but also that it would be referred to Defendant Davis); 9 (stating Defendant granted him kosher Passover meals but denied him daily kosher meals); 12–13 (saying that Defendant Davis would "help determine the outcome of Plaintiff's request to properly worship"); *see also* Doc. 19-3 (noting that Defendant Marcus would forward his denial "to the [religious services administrator] for the final decision.")). Plaintiff's Amended Complaint also states that Defendant Marcus said he would give Plaintiff information about Defendant Davis's decision but never did. (Doc. 19 at 4; *see also* Doc. 19-2 at 8).

In *Prim v. Jackson*, this Court examined a similar situation on a motion to dismiss where a prisoner's request for kosher meals was denied by prison officials. Nos. 2:14-cv-1219, 2:14-cv-2099, 2015 WL 11198054 (S.D. Ohio Mar. 16, 2015). There, the plaintiff alleged that Defendant Spatny recommended a denial of his kosher meal request and that Defendant Jackson "was the final decision maker." *Id.* at *4. The Court discussed that personal involvement is required for both Section 1983 and RLUIPA claims, noting that "[t]his rule holds true even if [a] supervisor has actual knowledge of the constitutional violation, as long as the supervisor did not actually participate in or encourage the wrongful behavior." *Id.* at *5 (internal citations omitted). The Court then granted the defendants' motion to dismiss the Section 1983 and RLUIPA claims. First, the Court noted that Defendant Spatny did not supervise Defendant Jackson. The Court then found that "[t]he allegation that Defendant Spatny's advice encouraged Defendant Jackson to make the decision that she did is not enough to state a claim here where the Complaint acknowledges that Defendant Jackson made the final decision and Defendant Spatny was not Defendant Jackson's supervisor." *Id.* at *5.

7

Taken as a whole, Plaintiff's Amended Complaint alleges that Defendant Marcus recommended denying his request for daily kosher meals, but that the ultimate decision rested with Defendant Davis. (Doc. 19-3; Doc. 19 at 3, 5, 12). Plaintiff does not allege that Defendant Marcus was Defendant Davis's supervisor, nor does he allege that Defendant Marcus was in any other way involved with the denial of Plaintiff's kosher meal request. Therefore, like in *Prim*, Plaintiff's kosher meal claims against Defendant Marcus fail to allege sufficient personal involvement to state a claim under either Section 1983 or RLUIPA.

Accordingly, Plaintiff's claims against Defendant Marcus for the denial of his kosher meal request should be **DISMISSED.**

**2. Work Proscriptions and Bible Study**

Plaintiff also raises claims against Defendant Marcus for the denial of his work proscription and religious study requests. For their part, Defendants argue that the days Plaintiff requested off work are too vague to state a claim for relief. (*See* Doc. 20 at 3, n.2). Previously, this Court directed Plaintiff to clarify which dates his work accommodation request involved. (Doc. 14 at 3).

Yet Plaintiff's Amended Complaint is not much clearer on this issue. Plaintiff states that he "seeks to have a work proscription where he does not have to work evidenced by a pass, and the ability to study with his fellow believers in a bible study wherever the institution sees fit." (Doc. 19 at 8). He also says that the holiday dates he is requesting are the "proscribed dates set aside for the Orthodox Jews" and that he is requesting to not work on the same dates "as theirs." (*Id.*). But Plaintiff's Amended Complaint requests "to observe the Annual Holy days, and Weekly Sabbaths by receiving Work proscriptions for every Saturday," as well as the following:

> #1.) The 14th, 15th, and 21st day of the 1st Moon, which is called Abib or first Harvest moon which is ascertained by the first appearing green ears of Barley then the following new moon Crescent sighted being the First day of the New Moon.

8

> #2.) The 50th day after the count of the 14th day of the First Moon, the 14th of the First Moon being day number 1. Formally called the Feast of Weeks.
>
> And #3.) The 1st, 10th, 15th, and 22nd day of the 7th Moon being counted off of the 1st moon as described in Leviticus Chapter 23 (Book of Yahweh Translation.)

(*Id.* at 7–8).

These descriptions do not assist the Court in determining what days Plaintiff means. While Plaintiff states that these days are the same days requested by those practicing Orthodox Judaism, he also cites to the "Book of Yahweh Translation" in support of his request. (*Id.* at 8). More still, he says that the founder of the House of Yahweh "was born and raised a Jew, yet differed only in the belief of . . . the calculation of the Holy days being done only by the Lunar cycles, not calendar's." (Doc. 19 at 14). These statements obfuscate Plaintiff's assertion that he seeks the same holidays as other prisoners who practice Orthodox Judaism. Plaintiff also does not provide more guidance to determine when the First Moon takes place other than the appearance of barley, yet other holidays cannot be calculated without this date. (*Id.*). Without more, the Court is unable to determine when Plaintiff seeks to have work proscriptions or religious study.

More still, Plaintiff does not allege any facts addressing how the denial of his work proscriptions and religious study prevents him from pursuing his religious faith. *See Damron v. Jackson*, No. 2:09-cv-050, 2011 WL 4402767, at *7 (S.D. Ohio Sept. 21, 2011) (granting summary judgment where a plaintiff did not allege how congregate worship is mandated by his faith); *cf. Christian Separatist Church Society of Ohio v. Mohr*, 2:15-cv-2757, 2017 WL 9532003, at *3 (S.D. Ohio Jan. 30, 2017) (denying a motion to dismiss where plaintiffs alleged that their religion is burdened by not having an opportunity to engage in congregate worship by stating that "worship is essential to salvation of their souls in the practice of their religion"). Plaintiff does not state that

9

his religion requires him to have work proscriptions for these days or that the denial of his work proscription or bible study impacts his ability to practice his religion.

As such, Plaintiff fails to state a claim under either Section 1983 or RLUIPA because both standards require some facts from which the Court can infer that the practice Plaintiff wishes to exercise stems from a sincerely held religious belief. Additionally, Plaintiff has not pled any facts concerning how the denial of work proscriptions and bible study impacts his ability to practice his religion. *Barhite*, 377 F. App'x at 511 ("RLUIPA thus requires an inmate to show that his or her religious exercise was substantially burdened."); *Kent*, 821 F.2d at 1225 ("[To survive a motion to dismiss], it must be determined whether the challenged practice of the prison officials infringes on the religious belief."). Therefore, the Court recommends that Plaintiffs' Section 1983 and RLUIPA claims against Defendant Marcus concerning his work proscription and bible study requests be **DISMISSED.**

D. **Defendant Free**

Plaintiff alleges that Defendant Free "cover[ed] up and stopp[ed] the administrative process of request by arbitrarily closing Plaintiff kites for requests." (Doc. 19 at 9). Construed liberally, Plaintiff appears to allege constitutional violations based on Defendant Free's denial of multiple grievances and kite requests that were intended for Defendant Marcus. (*See id.* at 3–5, 9–10).

Regardless of to whom Plaintiff directed his grievances, denials of administrative grievances or the failure to act "by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). "[T]here is no inherent constitutional right to an effective grievance procedure." *Christian Separatist Church Society of Ohio v. Mohr*, 2017 WL 9532003, at *3 (quoting *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). And there is no liability under § 1983 where a prison official's "only involvement

10

was to deny administrative grievances and to fail to remedy the alleged behavior or intervene on the inmate's behalf." *Prim*, 2015 WL 11198054, at *4 (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Indeed, any relief sought from a federal court must be for the "underlying constitutional violation and not for the wrongful denial of the grievance." *Id.*

Here, Plaintiff has not alleged any actions by Defendant Free other than the denial of grievances and administrative requests. Indeed, Plaintiff admits that Defendant Free "has nothing to do with religious service requests, nor does the Officers he told Plaintiff to report to." (Doc. 19 at 3). As such, Plaintiff has failed to state a claim for relief under Section 1983, since Defendant Free's only alleged involvement in Plaintiff's religious requests was the denial of grievances. *See Prim*, 2015 WL 1198054, at *3–4 (dismissing claims against a prison official where his only involvement was the denial of grievances); *Shehee*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that defendants' denial of administrative grievances was not sufficient to allege direct participation or encouragement of constitutional violations). Still more, any claims against Defendant Free under RLUIPA also fail, because, as Plaintiff admits, Defendant Free had no involvement in Plaintiff's religious requests other than denying grievances. *See, e.g.*, *Greenberg*, 2009 WL 890521, at *5–6 (stating that a plaintiff must allege personal involvement to prevail on a RLUIPA claim). Therefore, the Undersigned recommends that Plaintiff's claims against Defendant Free be **DISMISSED.**

E.  **Defendant Shoop**

Next, Plaintiff alleges that Defendant Shoop is liable under a respondeat superior theory, because he "sign[ed] off on the final form" that "denied" Plaintiff's religious accommodation request. (Doc. 19 at 12). Plaintiff also says Defendant Shoop knew of or had to reason to know

11

that Plaintiff's constitutional rights were being violated and failed to intervene to prevent the alleged harm. (*Id.*).

Generally speaking, liability in Section 1983 actions cannot be imposed based on respondeat superior. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (citing *Hays v. Jefferson Cty.*, 668 F.2d 869, 872–74 (6th Cir. 1982)). More still, "rubber-stamp[ing] a decision made by lower-level" employees may not be enough to establish Section 1983 liability for supervisors. *Lupo v. Voinovich*, 235 F. Supp.2d 782, 796–97 (S.D. Ohio 2002) (dismissing a claim against a defendant who signed a letter at the summary judgment stage). And again, "the denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983." *Grinter*, 532 F.3d at 576 (citing *Shehee*, 199 F.3d at 300).

Defendant Shoop's only alleged involvement was the signing of a form recommending that Plaintiff's religious accommodation request be forwarded to the religious services administrator, Defendant Davis. (Doc. 19 at 10–11; Doc. 19-3). Based on precedent in this circuit, this is not enough to state a claim for relief under Section 1983. For example, in *Grinter*, the Sixth Circuit affirmed the dismissal of claims against defendants who "failed to intervene" when informed in writing about misconduct, finding that this failure to act was not enough to establish liability under Section 1983. 532 F.3d at 575–76. Similarly, in *Lupo*, the plaintiff alleged that a defendant signed a letter requesting that an employment position be abolished, and the Court reasoned that if a signature were "sufficient" to establish Section 1983 liability for supervisors, "then little could be done within a state government that would not expose those in positions of authority to potentially crippling liability, not only in their official capacities as government agents, but more importantly

12

in their personal capacities." 235 F. Supp.2d at 796–97. Accordingly, the Court granted summary judgment for the defendant.

Here, Defendant's Shoop's only alleged involvement in the denial of Plaintiff's religious requests was the signing of a single form. And that form does not constitute a final denial as Plaintiff represents. Rather, the form refers the matter to Defendant Davis, who has the authority to make the final decision. (Doc. 19-3). Based on the precedent outlined above, Plaintiff's allegations are insufficient to state a Section 1983 claim under either a respondeat superior or a failure-to-intervene theory. Therefore, Plaintiff's Section 1983 claim against Defendant Shoop should be **DISMISSED.**

Turning to Plaintiff's RLUIPA claim against Defendant Shoop, the Court also finds that Plaintiff has failed to state a claim for relief. As the Court previously discussed, to establish liability under RLUIPA, a plaintiff must show a defendant's personal involvement "in the alleged violation." *Greenberg*, 2009 WL 890521, at *3; *see also Jacobs v. Strickland*, No. 2:08-cv-680, 2009 WL 2940069, at *2 (S.D. Ohio Sept. 9, 2009) (finding a plaintiff must plead more than conclusory allegations of personal involvement). While Plaintiff claims that Defendant Shoop "sign[ed] off the final form" that denied him his "rights to worship," other materials in his Amended Complaint contradict those statements. (Doc. 19 at 12). A form included in Plaintiff's pleading shows that by signing the form, Defendant Shoop referred the accommodation request to Defendant Davis. (Doc. 19-3). This act alone is not sufficient to state a claim under RLUIPA, because Plaintiff has not alleged Defendant Shoop was personally involved in the denial of Plaintiff's religious requests, nor that his actions "substantially burdened" Plaintiff's religious exercise. *Colvin*, 605 F.3d at 289.

As such, Plaintiff has failed to state a claim under either Section 1983 or RLUIPA, and his claims against Defendant Shoop should be **DISMISSED**.

### F. Defendant Davis

Finally, the Undersigned considers Plaintiff's Section 1983 and RLUIPA claims against religious services administrator Mike Davis. Plaintiff challenges the denial of his work proscriptions and bible study, along with his daily kosher meal request.

As discussed above, Plaintiff fails to allege facts showing that work proscriptions or bible study are required by his religion. (Doc. 19 at 7–8 (only stating that Plaintiff requested work proscriptions and bible study)). He also does not plead any facts addressing how the denial of these requests impacts his ability to practice his religion. (*Id.*). Accordingly, these claims against Defendant Davis should be **DISMISSED**.

But the Undersigned does find that Plaintiff has pled sufficient facts to proceed on his Section 1983 and RLUIPA claims against Defendant Davis for the denial of his daily kosher meal request. As stated above, Plaintiff has sufficiently pled the first element of both claims: that his belief that his religion requires him to eat kosher meals is sincerely held and religious in Plaintiff's "own scheme of things." *Kent*, 821 F.2d at 1224 (summarizing the pleading requirements for a Section 1983 First Amendment claim); *Cavin*, 927 F.3d at 458 (discussing pleading requirements for RLUIPA claims). More still, Plaintiff has asserted facts showing that the denial of kosher meals infringes on this religious belief and substantially burdens his ability to practice his religion, because the denial of kosher meals places "substantial pressure on [him] to modify his behavior and to violate his beliefs." *Barhite*, 377 F. App'x at 511.

Plaintiff has also alleged enough facts to show Defendant Davis's personal involvement in the denial of Plaintiff's kosher meal requests. On the whole, Plaintiff's Amended Complaint

14

shows that Defendant Davis had the final say on Plaintiff's daily kosher meal request. (Doc. 19 at 4, 5; Doc. 19-2 at 6; Doc. 19-3). And although some parts of Plaintiff's pleading make uncertain whether Defendant Davis issued a final decision, "[a]dministrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." (Doc. 19 at 3 (stating Plaintiff never received any communication from Defendant Davis), 4 (stating Plaintiff never received the results from Defendant Davis's review of the religious accommodation request), 5 ("Plaintiff has never received a final Review and Denial from [Defendant Davis] in Columbus.")); *Haight v. Thompson*, 763 F.3d 554, 561 (6th Cir. 2014) (denying a motion to dismiss where defendants argued no final decision had been made on whether to allow a sweat lodge). Plaintiff made his first request for daily kosher meals over two years ago, and at this stage in litigation, the Court finds these claims should not be dismissed simply because prison officials failed to respond to Plaintiff's request. *Haight*, 763 F.3d at 561 ("The inmates met their end of the bargain by requesting a ruling. Four-plus years later, they have nothing to show for it. That is the commissioner's problem, not theirs, and the absence of a response by the State does not permit the commissioner to argue that the inmates failed to exhaust their administrative remedies.").

Accordingly, Defendant's Motion to Dismiss as it relates to Plaintiff's Section 1983 and RLUIPA claims against Defendant Davis should be **DENIED in part and GRANTED in part.** The Undersigned **RECOMMENDS** that Plaintiff be allowed to **PROCEED** on these claims only as they relate to the denial of his request for daily kosher meals.

IV. **CONCLUSION**

For the foregoing reasons, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 20) be **GRANTED in part and DENIED in part**. The Undersigned **RECOMMENDS** that Plaintiff's Section 1983 First Amendment and RLUIPA claims against

15

Defendant Davis concerning the denial of his kosher meal request **PROCEED**. The Undersigned **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

Date: February 2, 2024　　　　　　　　　　　　/s/ Kimberly A. Jolson
　　　　　　　　　　　　　　　　　　　　　　KIMBERLY A. JOLSON
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE