IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTOPHER-MICHAEL
WILLIAMS,

          **Plaintiff,**

    v.                        Civil Action 2:23-cv-1042
                              Judge James L. Graham
                              Magistrate Judge Kimberly A. Jolson

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION, et al.,

          **Defendant.**

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Sanctions of Defendants for Failure to Follow Court Order and Request for an Injunction (Doc. 41).  For the following reasons, the Court **DENIES** Plaintiff's request for sanctions and **RECOMMENDS** Plaintiff's request for an injunction be **DENIED**.  The Court **ORDERS** Defendant to re-serve a copy of the Motion to File Answer Instanter (Doc. 38) on Plaintiff.  Additionally, the Clerk is **DIRECTED** to re-mail Plaintiff Docs. 37, 39, and 42.  Finally, the Court **EXTENDS** Plaintiff's deadline to respond to Defendants Motion to File Answer Instanter (Doc. 38) to on or before **May 17, 2024.**

**I.**    **Sanctions**

Under Ohio Department of Rehabilitation and Correction's ("ODRC") policy, mail sent to an inmate receives different treatment depending on if it classified as "legal mail" or "regular mail." (*See generally* Doc. 28 (describing ODRC's mail policies)).  Among other things, inmates tend to receive legal mail more quickly than regular mail because there are more safeguards on an inmate's rights to be present if the mail is opened or inspected by the institution.  (*Id.*).  Previously, the Court ordered that "mail from this Court addressed to the inmate-plaintiff in this case is legal

mail under *Sallier*" and that ODRC must "treat it as legal mail" rather than as regular mail. (*See* Doc. 28 at 4); *see Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003).

Now, Plaintiff has moved for sanctions under Federal Rule of Civil Procedure 37(b)(2)(A) for Defendants' "contempt" of this legal mail order.[1] (Doc. 41 at 1). In particular, he alleges that he has not received "notices sent out to Plaintiff from the Clerk of this court to inform him of activities filed on the case docket"; Defendant's Motion to File Answer Instanter (Doc. 38); two filings from state court matters; and orders from a different case pending before this Court (*see Williams v. Chambers-Smith et al.*, Case No. 2:24-cv-393). (Doc. 41 at 3). Defendant has opposed the Motion. (Doc. 43).

"A party that seeks civil contempt sanctions must demonstrate by clear and convincing evidence that the opposing party knowingly 'violated a definite and specific order of the court.'" *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795 (6th Cir. 2017) (citation omitted). Plaintiff fails to meet this threshold. None of Plaintiff's allegations describe anyone failing to comply with the Court's legal mail order. For one thing, Plaintiff does not allege that the institutional mailroom treated mail from the Court as regular mail—he merely asserts he has yet to receive docket mailings from the Clerk. (Doc. 41 at 3). The Court declines to assume, without more, that the reason Plaintiff has not received these mailings is because the institution failed to treat it as legal mail. Further, motions filed by Defendant are not "mail from this Court." (*See* Doc. 28 at 4). So even if Defendant's motion to file answer instanter was treated as regular mail, there would be no violation of an order from the Court. And, to the extent Plaintiff claims Defendant did not supply him "with a copy of his receipt," the Court notes that Defendant's motion to file answer instanter

---

[1] Plaintiff asserts that "Defendants are the counsel for the institutional mail room and staff of the agency that is guarding and detaining Plaintiff, who have also been served with a copy of this court's order to treat all mail coming from this court as legal mail." (Doc. 41 at 3). But the only Defendant remaining in this case is Mike Davis, a religious Services Administrator at ODRC. (*See* Docs. 30, 32).

2

contained certificates of service for both the motion and the answer. (Docs. 38 at 6, 38-1 at 8). Finally, the Court's legal mail order applies only to this case, Case No. 2:23-cv-1042. (*See* Doc. 28 at 4 (specifying the order applied only for the purpose of managing "this case")). It does not apply to mail from courts in Plaintiff's other pending cases, either in state or federal court.

Therefore, Plaintiff has not met his burden to demonstrate, by clear and convincing evidence, that Defendant knowingly violated a court order. Thus, sanctions are not warranted, and Plaintiff's request is **DENIED**. Acknowledging Plaintiff's representation that he has yet to receive some docket filings, however, the Court **ORDERS** Defendant to re-serve a copy of the Motion to File Answer Instanter (Doc. 38) on Plaintiff at his address on file with the Court. Additionally, the Clerk is **DIRECTED** to re-mail Plaintiff Docs. 37, 39, and 42. The Court is mindful of the delay in receiving even legal mail that incarcerated individuals can face, so it also **EXTENDS** Plaintiff's deadline to respond to Defendant's Motion to File Answer Instanter (Doc. 38) to on or before **May 17, 2024**.

## II.     Injunction

Plaintiff also requests an "injunction during the phases of these trial proceedings" that "order[s] defendants to serve him Kosher meals and Kosher sides not touched by inmates and sealed for proof, including salad, bread and veg[e]tables each individually sealed." (Doc. 41 at 4 (cleaned up)). The Court construes Plaintiff's request as a motion for a temporary restraining order or preliminary injunction that Defendant Davis provide him with a religious dietary accommodation.

"The standard for addressing a motion for a temporary restraining order is the same as the standard applied to a motion for a preliminary injunction." *Ferron v. Search Cactus, L.L.C.*, No. 2:06-cv-327, 2007 WL 2110497, at *1 (S.D. Ohio July 13, 2007) (citation omitted). Both are

3

extraordinary measures, and the movant faces a high burden to show that such a measure is justified. *See ACLU v. McCreary Cty.*, 354 F.3d 438, 444 (6th Cir. 2003); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). Indeed, the proof required to obtain this relief "is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Accordingly, the movant must show more than factual issues—he "must affirmatively demonstrate [his] entitlement to injunctive relief." *Davis v. Caruso*, No. 07-11740, 2008 WL 878878, at *3 (E.D. Mich. Mar. 28, 2008). When considering whether to grant this extraordinary relief, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation and internal quotation marks omitted). "These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers." *Hall v. Martin*, No. 1:10-CV-1221, 2012 WL 1579334, at *14 (W.D. Mich. Mar. 29, 2012) (citation omitted), *report and recommendation adopted*, No. 1:10-CV-1221, 2012 WL 1579321 (W.D. Mich. May 3, 2012).

The section of Plaintiff's motion that requests the injunction is brief. His sole rationale for the requested relief is that the Court previously decided Plaintiff's rights were violated. (Doc. 41 at 4). But Plaintiff misinterprets the Court's holding on Defendants' motion to dismiss. On a motion to dismiss, Plaintiff's claims needed only to meet the standard of containing "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court held that Plaintiff's claims against Mike Davis brought under Section 1983 and the Religious

4

Land Use and Institutionalized Persons Act ("RLUIPA") met this burden. (Docs. 30 at 14–15 (report and recommendation that the claims against Defendant Davis as they relate to the denial of Plaintiff's request for daily kosher meals could proceed), 33 (order adopting the report and recommendation)). The Court did not rule that Defendant Davis violated Plaintiff's rights.

Even considering the allegations in Plaintiff's Amended Complaint (*see* Doc. 19), he still has not shown a strong likelihood of success on the merits. To establish a strong likelihood of success on the merits, the movant must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This means that the movant must "show, at a minimum, serious questions going to the merits" of his claims. *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (internal quotation marks and citation omitted). Plaintiff's complaint centers on his claim that his religion, House of Yahweh, requires him to eat daily kosher meals. (*See generally* Doc. 19; *see* Doc. 30 at 1–2 (outlining the background of this case)). He alleges that Davis's inaction on his request for a kosher meal accommodation violates his First Amendment rights and RLUIPA. (Doc. 19). At this stage, there appears to remain factual questions, including if the vegetarian diet Plaintiff regularly receives conforms to his religious beliefs or if a kosher diet alone does. (*See* Doc. 20 (motion to dismiss claiming Plaintiff has not provided the institution with sufficient evidence that his vegetarian diet was insufficient); Doc. 19-5 (letter representing that House of Yahweh adherents "do not consume any food containing pork, shellfish, [or] blood" and noting a "Kosher diet . . . meets these requirements")). But no case in this Circuit has definitively answered these questions, and the motion at bar does not provide further support for Plaintiff's likelihood of success on the merits. So, Plaintiff has done no more than show he can possibly succeed on the merits.

In the same way, it is not clear that Plaintiff would suffer an irreparable injury without the

injunction because he receives vegetarian meals and has received kosher meals during certain religious holidays. (*See* Doc. 41 (describing that he was approved for kosher meals "during the feast of Unleavened bread.")). Even allowing for the potential of irreparable injury to weigh in favor of granting the requested relief, the other factors weigh in favor of judicial restraint.

Plaintiff's motion did not address either remaining factor—harm to others and the public interest—but the context of this case matters. In a prisoner civil rights case like this one, "[p]rison administrators [ ] should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 521 (1979). While a temporary restraining order in this case is unlikely to substantially harm others, the Undersigned "must be mindful of the cautions that apply to issuing an injunction that affects the operation of the prison system, which also shows that the public interest would not be served by issuing the injunction." *Carter v. Mich. Dep't of Corr.*, 2013 WL 5291567, at *6 (E.D. Mich. Sep. 19, 2013). In other words, "[t]he public interest in leaving the administration of [prisons to prison administrators] is another factor weighing against" a temporary restraining order here. *Winn v. Waugaman*, No. 0:14-cv-169-HRW, 2015 WL 1606151, at *5 (E.D. Ky. Apr. 8, 2015).

On balance, Plaintiff has not affirmatively shown he is entitled to the requested injunctive relief. Accordingly, the Undersigned **RECOMMENDS** that Plaintiff's request for an injunction (Doc. 41) be **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's request for sanctions and **RECOMMENDS** Plaintiff's request for an injunction be **DENIED**. The Court **ORDERS** Defendant to re-serve a copy of the Motion to File Answer Instanter (Doc. 38). Additionally, the

6

Clerk is **DIRECTED** to re-mail Plaintiff Docs. 37, 39, and 42.  Finally, the Court **EXTENDS** Plaintiff's deadline to respond to Defendants Motion to File Answer Instanter (Doc. 38) to on or before **May 17, 2024.**

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).  The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: May 7, 2024                         /s/ Kimberly A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE