IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTOPHER-MICHAEL WILLIAMS,

      Plaintiff,

  v.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION, et al.,

      Defendants.

Civil Action 2:23-cv-1042
Judge James L. Graham
Magistrate Judge Kimberly A. Jolson

### REPORT AND RECOMMENDATION

The parties' cross-motions for summary judgment are before the Court. For the reasons below, the Undersigned **RECOMMENDS** that Plaintiff's Summary Judgment Motion (Doc. 77) be **DENIED** and Defendant's Summary Judgment Motion (Doc. 78) be **GRANTED**.

**I.    BACKGROUND**

Plaintiff, a prisoner at Chillicothe Correctional Institution ("CCI") proceeding *pro se*, is a religious adherent of the House of Yahweh. (Doc. 77 at 2). At different times, Plaintiff describes House of Yahweh as "a special class of Jewish faith" or a "Jewish religion," though he makes it clear that he "differs from Jews" in "language and traditions not found in the Torah of the 'Every Word Spoken by Yahweh.'" (*See, e.g.*, *id.* at 4; Doc. 79 at 16). One tenant of his religion, says Plaintiff, is that he must eat daily kosher meals. (Doc. 77 at 2; *see also* Doc. 19 at 7 ("Plaintiff follows the Orthodox Jewish Eat laws . . . and Cleanliness laws.")). Plaintiff sues Ohio Department of Rehabilitation and Correction ("ODRC") religious services administrator Mike Davis. (*See* Doc. 19 (amended complaint)). He alleges that Davis denied him daily kosher meals in violation of his constitutional rights under the First Amendment and his statutory rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). (*Id.*).

According to the Amended Complaint, Plaintiff first requested daily kosher meals in January 2022, when he submitted a religious accommodation form to prison officials. (Doc. 19 at 7; *but see* Doc. 25 at 9 (Plaintiff's affidavit that he first requested kosher meals in 2021)). Plaintiff listed several verses of the Torah and said his desire to keep kosher was "to ensure he is safely in the Levitical eat laws." (Doc. 77 at 25 (listing Leviticus chapter 11; Leviticus chapter 23; Leviticus chapter 20, verses 25–26; Deuteronomy chapter 12, verses 15 and 22; and Deuteronomy chapter 14, verses 11–21)). In February 2022, religious services contractor Alfred Marcus recommended that Plaintiff's request be denied since "the sincerity of [Plaintiff's] request cannot be adequately determined because he does not give any religious leaders to support his request." (Doc. 19-3 (also noting Plaintiff's religious affiliation is uncertain because he was coded in the system differently than how he identified in his request)). But because Plaintiff's dietary request was "new," Marcus advised forwarding Plaintiff's request to the religious services administrator, Defendant Davis, for a final decision. (Doc. 19-3 (citing prison regulation 72-Reg-02.VI.H[1])). In June 2022, CCI Warden Tim Shoop signed off on the referral. (Doc. 19-3). In the meantime, Plaintiff received vegetarian meals. (Doc. 19 at 14).

Plaintiff filed another request for kosher meals in January 2023. (Doc. 19-4). As the basis for his request, Plaintiff again listed verses of the Torah. (*Id.* (listing Leviticus Chapters 2, 3, 11, and 26; and Genesis Chapter 7)). He expounded on the verses, noting that "I shall eat neither fat nor blood" and that the devices used to make his meals should not be "mingled with . . . unclean things to cook the food." (*Id.*). Plaintiff supported this request with the contact information of

---

[1] "The following matters shall be referred to the religious services administrator . . . New Dietary Requests: Requests that would require the creation of a special diet, a religious "feast" menu, or that would require the purchase of special foods (e.g., kosher, halal, etc.) not currently offered, or which would expand access to such diets to different or additional religious groups must be referred to the religious services administrator for final decision. Decisions to accommodate an incarcerated individual with existing dietary options (e.g., meatless diet, etc.) may be made at the institution." (Doc. 78-1 at 6–7).

2

Kohan Anayah Hawkins, the House of Yahweh's Overseer, and a November 2022 letter from Gerald Flurry, Pastor General at the Philadelphia Church of God. (*See* Doc. 78-1; Doc. 87 at 11; Doc. 3-2). Pastor Flurry's correspondence stated the purpose of the letter was to give Plaintiff information so that he could "state [his] personal beliefs." (Doc. 3-2 at 1). Attached to the letter was a 2001 article written by Mark Jenkins entitled "Is All Animal Flesh Good For Food?" (*Id.* at 2–5).[2]

Plaintiff subsequently submitted a letter from Kohan Hawkins to support his meal accommodation request. (Doc. 77 at 2, 23; *see also* Doc. 19 at 14). In that October 2023 letter, Kohan Hawkins provides:

> House of Yahweh members do not consume any food containing pork, shellfish, blood. (Foods that are unclean according to Leviticus Chapter 11 are not to be eaten) . . . It is mandatory that those who adhere to the faith of The House of Yahweh, be provided what is scripturally clean.
>
> Please provide [Plaintiff] with a Kosher diet which meets these requirements, including also that he not be served pork.

(Doc. 77 at 23).

Still having not heard back in writing on either accommodation request, Plaintiff filed this action on March 23, 2023. (Doc. 1; *see also* Doc. 19). In April 2024, Davis responded in writing to the requests, noting that he "mistakenly did not reply" earlier. (Doc. 77 at 24; *see also* Doc. 87-1 at 2 (explaining that Davis inadvertently responded to a different religious accommodation request instead)). Ultimately, Davis concluded that "Plaintiff's religious exercise would not be 'substantially burdened' if his request for Kosher meals was denied[.]" (Doc. 78-1 at ¶ 11–12

---

[2] Plaintiff asserts that because he filed this letter as an attachment to his original complaint, it should not be considered now that his Amended Complaint is the operative complaint. (Doc. 79 at 10). But, as Defendant points out, the letter was also attached to and considered with Plaintiff's second accommodation request for kosher meals. (*See* Doc. 19-4 at 1 (Plaintiff's accommodation request noting that Pastor Flurry's letter was attached); Doc. 3-2). Therefore, it is part of the record that the Undersigned considers.

(saying that Plaintiff could fully exercise his religious beliefs by eating vegetarian or vegan meals since "to exercise his religion[,] he need not eat any meat at all")). He denied Plaintiff a kosher meal accommodation, explaining that ODRC provides him with "[m]enu items [that] are void of pork/pork products and food [that] is consistent with the requirements" mentioned in Plaintiff's request. (Doc. 77 at 24). Further, Davis offered that "a meatless meal option with a vegan entrée" is available to him. (*Id.*). This lawsuit followed.

The Court previously granted in part Defendants' Motion to Dismiss, dismissing some defendants and claims. (Docs. 20, 30, 32). Remaining are Plaintiff's claims that Defendant Davis's denial of his religious accommodation request violated his rights under RLUIPA and the First Amendment. As relief, Plaintiff seeks an order that Defendant supply him kosher meals, at least $500,000 in damages, and fees. (Doc. 19 at 15).

Both sides filed motions for summary judgment. The motions are fully briefed and ripe for review. (Docs. 77, 78, 79, 87).

## II. STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379

4

F.3d 413, 416 (6th Cir. 2004) (citing *Liberty Lobby*, 477 U.S. at 251–52, and *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

### III. DISCUSSION

Both sides seek summary judgment on Plaintiff's claims. But as a preliminary matter, the Undersigned notes that Plaintiff's Amended Complaint does not specify in what capacity he sues Defendant Davis. (*See* Doc. 19 at 12–13). This matters because part of the relief Plaintiff seeks is monetary damages. (*Id.* at 15). Concerning his Section 1983 claim, absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The state of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Sup. Ct. of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945). In reality, a suit against Davis in his official capacity would be a way of pleading the action against the entity of which he is an agent. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against

5

a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)).

As for his RLUIPA claim, the Sixth Circuit is clear that monetary relief is not available. *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars [a] plaintiff's claim for monetary relief under RLUIPA."); *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) ("RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities."); *see also Stovall v. Prisk*, No. 2:22-CV-146, 2022 WL 4376599, at *4 (W.D. Mich. Sept. 22, 2022) ("RLUIPA does not create a cause of action against an individual in that individual's personal capacity.").

All that said, the Undersigned considers Plaintiff's ask for monetary damages from Davis only in his individual capacity and only for his Section 1983 claim.

A.     **RLUIPA Claim**

RLUIPA prohibits a government from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Under RLUIPA, a "religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

The Sixth Circuit has summarized the burden-shifting framework for a prisoner asserting a RLUIPA claim:

> The prisoner bears the initial burden. She must show (1) her desired religious exercise is motivated by a "sincerely held religious belief" and (2) the government is substantially burdening that religious exercise. *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019). If the prisoner successfully shows the state

> substantially burdens a sincere religious belief, the burden shifts to the government to justify the burden on the religious adherent under the "daunting compelling interest and least-restrictive-means test," with a slight twist. *Id.* Courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

*Ackerman v. Washington*, 16 F.4th 170, 179–180 (6th Cir. 2021); *see also Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1001 (6th Cir. 2017) (noting the substantial burden inquiry and the question of whether the government's interest is compelling are questions of law). Defendant challenges Plaintiff's initial burden. (Doc. 78 at 8–13).

As an initial matter, Plaintiff has continually brought new facets of his alleged beliefs into this lawsuit. For example, Plaintiff twice requested "kosher" meals at CCI. (Doc. 77 at 25; Doc. 19-4). But in his summary judgment briefing, he describes at length that what is required of his religion is that his meals be "scripturally clean"—which excludes meals "not prepared under the laws of Yahweh" or "prepared by unclean individuals." (*See, e.g.*, Doc. 79 at 10, 13). According to Plaintiff's interpretation of various Torah verses, as presented in his briefing, "unclean individuals" includes any person not "ordained under the laws of Yahweh" to prepare meals; any person who doesn't "worship Yahweh by keeping his every word"; any person who does "not keep the Torah"; and any person who is a "practicing homosexual." (*Id.* at 2–4, 10, 13–14). Plaintiff seemingly admits that ODRC's kosher meals do not meet his "scripturally clean" standard. (*See* Doc. 77 at 4; Doc. 79 at 13). But he still wants them, as they are the "close[s]t" way to accomplish "scripturally clean" eating in prison. (*Id.*; Doc. 79 at 13, 17 ("Kosher meals are the most reasonable and possible alignment with the commandments that would have me [] request the institution to allow me to sacrifice my own animals and have my own garden for food.")). In other words, some of his filings suggest Plaintiff views kosher meals not as a requirement of his religion but as the

7

best accommodation of his sincere belief that he eat meals prepared by "clean" individuals and prepared under the laws of Yahweh. (*See* Doc. 77 at 4; Doc. 79 at 10, 13, 17). So, it is not clear that even if Plaintiff were provided kosher meals, that would satisfy his religious beliefs. *Cf. Magee v. Keim*, No. 05-087-GPM, 2008 U.S. Dist. LEXIS 121539, at *7–8 (S.D. Ill. Feb. 27, 2008). At the end of the day, though, these beliefs were not specified or explained in the requests that Davis reviewed. Consequently, the Undersigned considers only the dietary requirements laid out in Plaintiff's requests that Davis had the opportunity to consider.

As stated, Plaintiff must first demonstrate his meal accommodation request stems from a sincerely held religious belief. *Cutter*, 544 U.S. at 725 n.13 ("Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion . . . the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity."). This showing is not difficult for prisoners to make. *Ackerman*, 16 F.4th at 180. Rather, "[t]he sincerity prong just requires courts 'to determine whether the line drawn by the plaintiff between conduct consistent and inconsistent with her or his religious beliefs reflects an honest conviction.'" *Id.* (quoting *New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 586 (6th Cir. 2018) (internal quotation marks and citation omitted)). "In the end, the sincerity requirement is just a 'credibility assessment' that asks if a prisoner's religious belief is honest." *Ackerman*, 16 F.4th at 181.

Plaintiff's initial request says he identifies as an "Israelite from the Tribe of Yahudah," and his desire to receive kosher meals is "to ensure that [he is] safely in the Levitical eat laws of Yahuah Leviticus Chapter 11 verses 1–47." (Doc. 77 at 25; *see also id.* at 4 (Plaintiff's assertion that "following kosher dietary laws" is part of his personal religious beliefs), 6 (stating Plaintiff used "funds beyond [his] means to purchase food from the commissary because he was "forced to eat food that was a violation of [his] vow taken to [his] Father."); Doc. 19 at 14 (alleging Plaintiff's

8

religion teaches "required eat laws and observance of the cleanliness laws, and consecration of cooking utensils (not used to cook unclean foods) exactly as" people who follow Judaism)).

Defendant challenges whether Plaintiff has a sincerely held religious belief. (Doc. 78 at 9). He first says the verses Plaintiff referenced in his two requests are either irrelevant to kosher meals or do not support his alleged need to eat them. (*See* Doc. 78 at 8–9). The Sixth Circuit has commented that one purpose of the sincerity question is to filter out inauthentic requests—in other words discerning whether plaintiff is "faking it." *Haight*, 763 F.3d at 565–66 (noting that to the extent prison officials believe individuals are "faking" their religious beliefs or "making it up when it comes to their belief" that certain foods are "imperatives" for their religious exercise, they may challenge sincerity); *see also Ackerman*, 16 F.4th at 181 ("[E]ven though 'sincerity rather than orthodoxy is the touchstone, a prison still is entitled to give some consideration to an organization's tenets' in assessing credibility." (citation omitted)). Defendant's argument is not that Plaintiff is "faking it," *per se*, but rather that Plaintiff did not support his request with religious literature saying he needs kosher meals. The Court concludes that these arguments better address the substantial burden imposed on Plaintiff's religious exercise—in other words, the evaluation of whether Plaintiff's current diet accommodates what he says his religion requires—rather than the sincerity of his religious belief.

Defendant also contends that the letter from Pastor Flurry and the attached article that Plaintiff provided in his first request merely suggest eating "clean meat" for one's health rather than for a religious reason. (Doc. 78 at 2–3 (citing Doc. 3-2 at 1 (Pastor Flurry's letter in response to Plaintiff's questions about "clean and unclean meats"), 3 ("These laws were given for your health, not for your spiritual well-being.")). Said another way, Defendant argues Plaintiff wanted a specific meal plan for non-religious reasons. *Cf. Vinning-El v. Evans*, 657 F.3d 591, 594 (7th

9

Cir. 2011) ("A prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than a preference for the way a given diet tastes, a belief that the preferred diet is less painful for animals, or a prisoner's desire to make a pest of himself and cause trouble for his captors."). But even if Pastor Flurry generally shares Plaintiff's religious beliefs but believes in eating clean meat for health reasons, "RLUIPA's protections are 'not limited to beliefs which are shared by all of the members of a religious sect.'" *Ackerman v. Washington*, 436 F. Supp. 3d 1002, 1013 (E.D. Mich. 2020) (citation omitted), *aff'd*, 16 F.4th 170 (6th Cir. 2021). And nothing else in Plaintiff's accommodation paperwork points to his request being made for non-religious reasons. In short, on this record, Plaintiff has met his burden to demonstrate at least a genuine issue of material fact that his desire to follow a particular diet was motivated by a sincerely held religious belief.

Next, Plaintiff must demonstrate that Defendant Davis's denial of his accommodation request substantially burdens his religious exercise. At base, the "substantial burden" showing is a "difficult threshold to cross." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 736 (6th Cir. 2007). "'[T]he Government substantially burdens an exercise of religion' under RLUIPA 'when it places substantial pressure on an adherent to modify his behavior and to violate his beliefs or effectively bars his sincere faith-based conduct.'" *Ackerman*, 16 F.4th at 184 (quoting *Fox v. Washington*, 949 F.3d 270, 278 (6th Cir. 2020)) (internal quotation marks omitted). A prison can substantially burden an exercise of religion when it "prevents participation in sincerely motivated conduct." *Id.* (citation omitted). A burden is less than substantial when it "does not 'pressure the individual to violate his or her religious beliefs.'" *Young v. McKee*, No. 2:17-CV-23, 2019 WL 5273963, at *4 (W.D. Mich. July 16, 2019) (citation omitted), *report and recommendation adopted*, No. 2:17-CV-23, 2019 WL 3561840 (W.D. Mich. Aug. 6, 2019). Because RLUIPA dictates "that the substantial-burden inquiry is practice specific[,]" the Court is

10

required to "first identify the 'religious exercise' at issue." *Ackerman*, 16 F.4th at 184–85 (citing 42 U.S.C. § 2000cc-1; 42 U.S.C. § 2000cc-5; and *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015)).

Plaintiff first requested "'Kosher' meals to ensure that [he is] safely in the Levitical eat laws . . . Leviticus Chapter 11 verses 1–47." (Doc. 77 at 25 (listing several verses in Leviticus and Deuteronomy as further support)). In other words, he defined "kosher" as meals within the "Levitical eat laws" of Leviticus Chapter 11 of the Torah. His subsequent meal request expanded on this definition of "kosher," stating that "I shall eat neither fat nor blood" and that his meals must be handled with "devices that have not been mingled with . . . unclean things to cook the food." (Doc. 19-4; *see also* Doc. 25 at 9 (Plaintiff's affidavit stating that "[t]he requirement for my worship is that the blood cannot be placed on the preparation devices.")). Pastor Flurry's letter and attached article do not say Plaintiff is required to eat kosher meals, but rather offer interpretations of various Torah and Bible verses concerning which types of meat may be eaten. (Doc. 3-2). For its part, Kohan Hawkins's letter does request that CCI provide Plaintiff with a kosher diet (that also does not include pork). (Doc. 19-5). Yet nowhere does Kohan Hawkins provide that kosher meals are required for House of Yahweh members. (*Id.*). The only stated requirement for meals is that House of Yahweh members "do not consume any food containing pork, shellfish, or blood." (*Id.* (also noting that it is "mandatory that those who adhere to the faith of The House of Yahweh, be provided what is scripturally clean" but not defining what "scripturally clean" means beyond stating "foods that are unclean according to Leviticus Chapter 11 are not to be eaten")). The record shows that Plaintiff has meal options available to him that meets all these requirements.

The parties do not contest that Plaintiff receives or has access to both vegetarian and vegan meal options. Either option, by definition, accounts for Plaintiff's religious belief that he must

11

avoid pork, shellfish, blood, or fat. (*See* Doc. 78-1 at ¶ 5 (Defendant Davis's declaration that the vegetarian and vegan options do not contain pork, shellfish, blood, fat, or meat)). What's more, according to ODRC's Dietary Operations Manager:

> All equipment used in preparing CCI's mainline meals and vegetarian/vegan meals is cleaned and sanitized between each use. To prevent cross contamination, once they are cleaned and sanitized, the same pots, pans and cooking utensils used to prepare the prison's vegetarian/vegan meals are not used to prepare its mainline meals. Conversely, once they have been cleaned and sanitized, the same pots, pans and cooking utensils used to prepare the prison's mainline meals are not used to prepare its vegetarian/vegan meals.

(Doc. 87-2 at 2; *see also* Doc. 87-2 at 5 (procedure requiring individuals assigned to food services at ODRC to wash their hands before engaging in food preparation, when working with food, when cleaning equipment, and during food preparation to prevent cross-contamination when changing tasks) (also requiring staff to use hand, hair, and body protection before food is handled)). In other words, the utensils used to cook and serve Plaintiff's vegan or vegetarian meals are not also used to cook and serve meals that contain pork, shellfish, blood, or fat, unless they are first cleaned and sanitized. These procedures, as Defendant argues, seemingly account for Plaintiff's religious belief that the "devices" used to cook his meals must not be "mingled with" those used to cook unclean foods. (Doc. 78 at 7). Plaintiff does not say otherwise. (*See generally* Doc. 79 (focusing arguments on individuals that touch his food rather than devices used to cook his food)). *Cf. Cloyd v. Dulin*, No. 3:12-CV-1088, 2012 WL 5995234, at *4 (M.D. Tenn. Nov. 30, 2012) (noting that if a Muslim prisoner is given an "alternative to eating non-halal meat, he does not suffer a 'substantial burden' to his religious beliefs under RLUIPA").

Regardless, Plaintiff argues that because his request "was that the food be in accordance with the Torah," Davis's denial still burdens his religious beliefs. (Doc. 77 at 5). But as stated, Plaintiff specifically requested "'Kosher meals to ensure that I am safely in the Levitical eat laws

12

of Yahuah Leviticus Chapter 11 verses 1–47." (Doc. 25 at 77; Doc. 19-5). To this end, Defendant provides an unsworn declaration of Rabbi Areyah Kaltmann, the chief Chabad Rabbi of Columbus Ohio, who is "conversant with Torah." (Doc. 78-2). Rabbi Kaltmann states that Chapter 11 of Leviticus contains a set of rules about which animals are clean and which animals are not. (*Id.* at ¶ 7); *cf. McKenzie v. Michigan Dep't of Corr.*, No. 2:13-CV-291, 2013 WL 5963115, at *4 (W.D. Mich. Nov. 8, 2013) (considering a religious diet accommodation request and noting "nothing in [Genesis 9, verses 1–17; Deuteronomy 4, verses 3–5; Deuteronomy 14; or Leviticus 11, verse 44] requires the consumption of dairy and meat. Rather, it merely specifies which animals and dairy may be consumed."), *aff'd*, No. 14-1112, 2015 WL 13926939 (6th Cir. July 15, 2015). So, according to Defendant, vegetarian or vegan meals are acceptable under the religious texts Plaintiff's accommodation request listed. (Doc. 78 at 9). Plaintiff responds that Rabbi Kaltman cannot determine his beliefs (Doc. 79 at 14), but Plaintiff's letter of support from Kohan Hawkins seemingly corroborates Rabbi Kaltmann. Specifically, the letter says "House of Yahweh members do not consume any food containing pork, shellfish, blood. (Foods that are unclean according to Leviticus Chapter 11 are not to be eaten.)." (Doc. 19-5). And Plaintiff's own interpretation of Torah verses in his accommodation requests amounted only to that he cannot eat fat or blood and that the devices used to cook and serve food must be unmingled. (Doc. 19-4). Plaintiff provided Davis no other concrete explanation about his dietary needs or beliefs. *Cf. McAtee v. Ewing*, No. 18-CV-858-WMC, 2021 WL 3856742, at *9 (W.D. Wis. Aug. 30, 2021) ("While plaintiff asserts that no further detail was necessary [as to his request for a kosher diet] because WSPF served only one kind of kosher meal, a kosher diet is not, as plaintiff puts it, 'self-explanatory.' . . . Indeed, Jewish inmates do not all strictly follow all dietary laws[.]").

13

Therefore, whether by Rabbi Kaltmann's interpretation of the Torah, by Kohan Hawkins's interpretation of Leviticus Chapter 11, or by Plaintiff's own interpretation of the same, Plaintiff has failed to demonstrate Defendant Davis's denial of his kosher meal request substantially burdened his religious exercise when he receives vegetarian or vegan meals. *Cf. Spearman v. Michigan*, No. 20-1476, 2020 U.S. App. LEXIS 40577, at *11–12 (6th Cir. 2020) (dismissing an RLUIPA claim because a plaintiff's testimony did not establish that a vegan diet was a tenant of his religion, therefore the denial of his request to receive vegan meals did not substantially burden the practice of his religion); *Robinson v. Jackson*, 615 F. App'x 310, 313 (6th Cir. 2015) (affirming dismissal of a Muslim prisoner's RLUIPA claim based on the denial of halal meals because, by the plaintiff's "own definition," a vegetarian meal that contained no meat or alcohol was halal.); *cf. Ruiz v. Adamson*, No. 10 C 1632, 2012 WL 832986, at *7 (N.D. Ill. Mar. 8, 2012) (concluding a prisoner met the substantial burden showing when the prison official seemingly based his understanding of House of Yahweh dietary requirements solely on a letter sent to a different chaplain at a different prison years earlier). In other words, Plaintiff receives meals that accommodate his stated religious beliefs.

Because Plaintiff has not carried his burden of demonstrating that Davis substantially burdened his religious exercise, the Undersigned need not address the third step of the RLUIPA analysis. *See, e.g.*, *Thomas v. Little*, No. 07-1117-BRE/EGB, 2009 WL 1938973, at *5 (W.D. Tenn. July 6, 2009) (citing *Living Water Church of God*, 258 Fed. App'x at 742). Accordingly, the Undersigned **RECOMMENDS** Defendant Davis be **GRANTED** summary judgment on this claim.

### B. First Amendment Free Exercise Claim

Plaintiff's Section 1983 claim, based on the same conduct at issue in his RLUIPA claim, is rooted in the First Amendment's free exercise clause. Like a claim under RLUIPA, a prisoner bringing a claim that prison officials violated his right to exercise his religion must first establish that "the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (citation omitted)). Then, the plaintiff must establish that the defendant's behavior "infringes upon this practice or belief." *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 460–61 (6th Cir. 2019). In other words, "the prisoner must also show that the prison's action substantially burdens his sincerely held religious beliefs." *Turner v. Ohio Dep't of Rehab. & Correction*, No. 2:19-CV-02376, 2021 WL 2158179, at *4 (S.D. Ohio May 27, 2021), *report and recommendation adopted*, No. 2:19-CV-2376, 2021 WL 3486328 (S.D. Ohio Aug. 9, 2021). If the inmate can make that showing, the court then applies the balancing test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), to determine whether the defendant's conduct was reasonable. *Turner*, 2021 WL 2158179, at *4; *see also Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010) ("The constitutional protection afforded under § 1983 is less strong [than that under RLUIPA.]").

Because the Undersigned has already concluded that Plaintiff failed to show Defendant Davis's denial of his kosher meal accommodation request substantially burdened Plaintiff's religious exercise, it is unnecessary to proceed with the *Turner* test. *See, e.g., Annabel v. Campbell*, No. CV 20-11114, 2023 WL 9111615, at *5 (E.D. Mich. Sept. 26, 2023) ("Because summary judgment should be granted on his RLUIPA claims, it follows that summary judgment should be also granted for Defendants on Annabel's First Amendment Free Exercise claims, as '[c]ourts have

15

recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment.'" (citations omitted)), *report and recommendation adopted in part*, No. 20-11114, 2024 WL 915542 (E.D. Mich. Mar. 4, 2024); *Stovall v. Prisk*, No. 2:22-CV-146, 2022 WL 4376599, at *4 (W.D. Mich. Sept. 22, 2022) (citation omitted) ("The Sixth Circuit has relied upon [RLUIPA's] legislative history to conclude that ["substantial burden"] has the same meaning under RLUIPA as provided by the Supreme Court in its decisions regarding First Amendment free exercise claims."). *See also Al-Shimary v. Dirschell*, No. 2:21-cv-12269, 2023 WL 5385414, at *2 (E.D. Mich. Aug. 22, 2023) (citing *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)) ("No constitutional right is violated when a prisoner's diet is sufficient to sustain him or her in good health and without violating his or her religious dietary restrictions."). However, because Plaintiff heavily relies on cases that he argues definitively instruct that he should receive kosher meals, the Undersigned briefly addresses Defendant's qualified immunity defense.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (citation omitted). In particular, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Relevant here, "[a]t the summary judgment stage, qualified immunity does not apply if the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) [a defendant's] conduct violated a plaintiff's constitutional rights, and (2) the right was clearly established and one of which a reasonable officer would have known." *Osborn v. City of Columbus*, No. 22-3570, 2023 WL 2523307, at *3 (6th Cir. Mar. 15, 2023) (citation omitted).

"The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). "The contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Even if Plaintiff were to establish that Defendant violated his First Amendment right in denying his accommodation request, Defendant says he is still entitled to qualified immunity as to Plaintiff's claim for monetary damages. Defendant says that he is entitled to qualified immunity because "there is no precedent from either the Sixth Circuit or the Supreme Court which establishes beyond debate that the First Amendment required Defendant to provide Plaintiff with kosher meals" in light of his specific accommodation requests. (Doc. 78 at 17).

Since Defendant has raised the qualified immunity defense, Plaintiff bears the burden of showing that he is not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012)). Reading Plaintiff's response generously, he points to several cases that, according to him, defeat the defense. But even looking past the fact that none of these cases are in-circuit, *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 368 (6th Cir. 2022) (noting out-of-circuit or unpublished cases "do not clearly establish anything as to the officers"), they do not clearly establish the right asserted.

For example, in *Blount v. Johnson*, the court found that a House of Yahweh member's Free Exercise and RLUIPA rights were violated when he was denied a kosher meal accommodation. No. 7:04-CV-00429, 2007 WL 1577521 (W.D. Va. May 30, 2007). In that case, the prisoner was unable to eat a vegetarian diet in compliance with his beliefs due to the high concentration of beans upsetting his stomach. *Id.* at *1. The prisoner requested kosher meals to ensure he would "only

17

eat Kosher meats . . . and only eat animals that are labeled as clean[.]" *Id.* at \*2. The court found prison officials violated the prisoner's rights because it denied the meal request—not after an individualized assessment as required by the cited law—but on the basis that House of Yahweh was not on the approved list of religions to receive kosher meals. *Id.* at 8. Not only is this case factually different, as Plaintiff has not provided evidence that he is unable to eat the vegetarian and vegan meal options, but Defendant's denial of Plaintiff's accommodation request involved an individual consideration of Plaintiff's stated beliefs.

Similarly, in *Ruiz v. Adamson*, the court allowed a plaintiff to proceed on his RLUIPA claim after a prison official denied his accommodation request to receive a kosher diet. 2012 WL 832986, at \*8. But again, there are important differences. There, the prison official denied the request solely because a letter from a House of Yahweh official from almost ten years earlier advised that members should not eat kosher fare. *Id.* at \*2. For this reason, the court found a substantial burden existed under RLUIPA and the prisoner was, therefore, allowed to proceed with his claim for monetary damages under the Section 1983. Since Davis considered Plaintiff's own stated understanding of "kosher" as well as the supporting letters in coming to his decision, *Ruiz* is not on all fours.

Lastly, in *Simon v. Henning*, another House of Yahweh member's request for kosher meals was denied. No. ED CV 13-2281-RGK(E), 2017 WL 10560613 (C.D. Cal. Sept. 1, 2017). But rather than supporting Plaintiff's arguments, the court found prison officials were entitled to summary judgment on the First Amendment claim because a House of Yahweh official told them that the mainline diet at the prison was approved for its members. *Id.* at \*11. *See also Magee*, 2008 U.S. Dist. LEXIS 121539, at \*7–8 (finding on the record it was "undisputed that a vegan diet is acceptable" for "the House of Yahweh faith group").

All told, Plaintiff's Section 1983 claim fails for the same reasons as his RLUIPA claim. And, even if Plaintiff were able to establish that Davis violated his constitutional rights, those rights were not so clearly established as to allow monetary liability. Accordingly, the Undersigned **RECOMMENDS** that Defendant Davis be **GRANTED** summary judgment on this claim as well.

## IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** Plaintiff's Summary Judgment Motion (Doc. 77) be **DENIED** and Defendant's Summary Judgment Motion (Doc. 78) be **GRANTED**.


Date: February 26, 2025                                  /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE


### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).