**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|                                                     |   |                            |
|-----------------------------------------------------|---|----------------------------|
| Christopher-Michael Williams,                       | : |                            |
|                                                     | : | **Case No. 2:23-cv-1042**  |
| Plaintiff,                                          | : |                            |
| v.                                                  | : | **Judge Graham**           |
|                                                     | : |                            |
| Warden, Chillicothe Correctional Institution, et al., | : | **Magistrate Judge Jolson** |
|                                                     | : |                            |
| Defendants.                                         | : |                            |

## OPINION & ORDER

This matter is before the Court upon Plaintiff Christopher-Michael Williams' ("Williams") objections to the Magistrate Judge's Report & Recommendation ("R&R"). Doc. 97; doc. 93. The R&R determined that Williams' motion for summary judgment (doc. 77) should be denied and Defendant Mike Davis' ("Davis") cross-motion for summary judgment (doc. 78) should be granted. For the reasons that follow, the Court **OVERRULES** Williams' objections and **ADOPTS** the R&R, and therefore **GRANTS** Davis' motion for summary judgment and **DENIES** Williams' motion for summary judgment.

## STANDARD OF REVIEW

When a party raises timely objections to a magistrate judge's report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). When no objections are timely filed, a district court reviews a magistrate judge's report and recommendation for clear error. Fed. R. Civ. P. 72, advisory committee note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

[1]

The R&R in this case concerns the parties' cross motions for summary judgment. Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The standard of review remains the same when reviewing cross-motions for summary judgment versus a motion filed by only one party. *Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016)

**DISCUSSION**

The dispute in this matter is straightforward.[1] Williams, an inmate at Chillicothe Correctional Institution ("CCI"), requested that he be provided kosher meals due to his faith as an adherent of the House of Yahweh. Davis, the religious services administrator for the Ohio Department of Rehabilitation and Correction ("ODRC"), denied Williams' request. Williams filed this lawsuit.

A motion to dismiss whittled down the claims and defendants. *See* doc. 32. The cross-motions presently before the Court seek judgment on Williams' two remaining claims against Davis, the sole remaining defendant. Under 42 U.S.C. § 1983, Williams alleges that the denial of his kosher meal request violated his constitutional rights under the First Amendment. Williams also alleges that the same denial violated his statutory rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). Both claims require the claimant to show, *inter alia*, that the state has substantially burdened the claimant's religious exercise.

In the R&R, as an initial matter, the Magistrate Judge determined that the § 1983 claim can only proceed against Davis in his individual capacity, and that monetary relief is not available for an RLUIPA claim. Doc. 93, # 828-29. As for the merits of the RLUIPA claim, the Magistrate Judge determined that Williams bears the initial burden to show (1) that his exercise is motivated by a sincerely held religious belief, and (2) that the government is imposing a substantial burden on that exercise. *Id.* (citing *Ackerman v. Washington*, 16 F.4th 170, 179-80 (6th Cir. 2021)). The Magistrate Judge further determined that while Williams sufficiently established (at the summary judgment stage) the sincerity of his beliefs, he failed to establish that the denial of kosher meals

---

[1] And the Court is grateful for the efforts of the Magistrate Judge toward making it so.

imposed a substantial burden on his religious exercise, given that he has access to meals which fit the parameters of his accommodation request.

As to the § 1983 claim, the Magistrate Judge reached the same conclusion, because "[c]ourts have recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment." *Fox v. Washington*, 949 F.3d 270, 277 (6th Cir. 2020). Lastly, after surveying the case law, the Magistrate Judge opined on Davis' qualified immunity defense, concluding that, "even if [Williams] were able to establish that Davis violated his constitutional rights, those rights were not so clearly established as to allow monetary liability." Doc. 93, # 842.

In his objections, Williams takes issue with the conclusion that his religious exercise is not substantially burdened by the denial of his request for kosher meals. At the root of these objections is the Magistrate Judge's decision to "[consider] only the dietary requirements laid out in [Williams'] requests that Davis had the opportunity to consider." *Id.* at # 831. Under those dietary requirements, the ever-present vegetarian options provided Williams with compliant meals. But since that time, Williams' understanding of the dietary requirements of his faith has drastically expanded, and much of his current argument is based on an understanding of his faith that was not presented to Davis in the accommodation request.[2]

---

[2] Williams concedes that he has "added new elements to [his] claim" because he is "still growing," and has even "grown beyond the customs of the House of Yahweh." Doc. 97, # 886. *Cf., id.* at # 886-87 ("[House of Yahweh was] like a pair of pants that is too small, but there were no other pants around. Only upon my release will I find those proverbial pair of pants that are Big Enough to hold the man I have become in the image of Yahweh.") (capitalization original).

Near the end of his objections, Williams writes "I don't have the same faith as the House of Yahweh, and they might even attack my ardent passion for only listening to the words that Yahweh gave to Mosheh, and not following Yahshua at all." *Id.* at # 892; *contrast* doc. 19-4 (Williams' second accommodation request, stating "Hebrews Chapter 12 says that Yahshua the Messiah is the high priest and we need not for mans approval to worship the way he did when he walked this earth.")

[4]

For example, in his first request for kosher meals, in January 2022, Williams stated his desire to be "safely in the Levitical eat laws," specifically citing Leviticus Ch. 11:1-47, Ch. 23, Ch. 20:25-26, and Deuteronomy Ch. 12:15 and 22, and Ch. 14:11-21. Doc. 77, # 667. He made a second request, this time citing Leviticus Ch. 2, 3, 11, and 26, and Genesis Ch. 7, supported by a letter from Gerald Flurry, Pastor General at the Philadelphia Church of God. Doc. 19-4; doc. 3-2. He later supported his request with a letter from Kohan Anayah Hawkins, overseer for the House of Yahweh, who stated that members of the faith "do not consume any food containing pork, shellfish, blood," again citing to Leviticus Ch. 11. Doc. 19-5, # 275. Across all these materials submitted in support of Williams' request for kosher meals, none state that House of Yahweh adherents must keep kosher, and nothing indicates that a vegetarian or vegan meal option would violate the stated requirements or otherwise burden Williams' religious exercise. Accordingly, Williams' request was eventually denied, with Davis writing, "[m]enu items are void of pork/pork products and food is consistent with requirements mentioned in your request," and that "a meatless meal option with a vegan entrée is available." Doc. 77, # 666. Because he could not show that menu items available to him were inconsistent with the stated requirements of his faith, the Magistrate Judge concluded that his religious exercise was not substantially burdened by the denial of his kosher meal request.

In his objections, Williams now argues that his request "in fact said, 'food in line with the scriptures.'"[3] Doc. 97, # 887. And by "the scriptures," Williams argues that he is not solely

---

[3] Williams appears to represent this as a direct quotation from his religious accommodation request(s), one which he repeats numerous times in his objections. *See* Doc. 97, # 887 ("Once the assertion said in line with the scriptures it meant every word that the father spoke regarding food"); *id.* ("I never boxed myself in with only specific sections of the scriptures but requested 'In line with the Torah.'"); *id.* ("There was not enough space on the forms to place the 'Every word of Yahweh' on there so I had to say 'In line with the scriptures.'"); *id.* at # 890 ("my request in religious accommodation filed, under Exhibits 1 & 4 of complaint, specifically stated that I needed "foods that were in line with the scriptures."). But his actual

referring to the specific verses cited in his requests, but rather to "every word that the father spoke regarding food." *Id.* Thus, to understand the full breadth of dietary requirements prescribed by his faith, Williams directs the Court to the nearly 300 pages of text submitted alongside his objections. *See* Doc. 98. These pages are not Bible verses nor any other known religious text, but rather are Williams' own attempt to write "Every word of Yahweh (as inspired by Yahweh correcting the errors added through translation and subject to grow upon new revelation)." Doc. 97, # 886. In other words, Williams now bases his request on scripture—"Yahweh Said"—written by his own hand.[4]

Nevertheless, even under "Yahweh Said," Williams concedes that "Kosher meals are not sufficient to satisfy my worship to Yahweh." *Id.* at # 890. For example, Williams cites to "Yahweh Said" as prohibiting the consumption of food that has been dead for over 3 days, but fish (labeled as "kosher") that Williams purchases from the commissary has been dead "for untold days." *Id. Cf.* doc. 19-2, # 267 (message from Williams to chaplain complaining that kosher meal provided for Passover is in violation of Exodus Ch. 12). As to the inadequacy of vegetarian meals, Williams claims that "individuals who do not follow the same words of Yahweh are unclean and everything they touch, or sit on, becomes scripturally unclean, making the inmates who prepare the vegetarian meals and the staff unclean." Doc. 79, # 709. Notably, Williams' issue with the vegetarian meals is *not* because they lack the formal kosher designation. Furthermore, Davis has submitted a declaration from Michelle Tatman, ODRC Dietary Operations Manager, in which she states:

> The personal qualifications of the inmates, Aramark staff, and Aramark's suppliers who ship, deliver, unpack, prepare, cook, and serve the vegetarian/vegan option provided to inmates at CCI are no

---

accommodation requests, attached to his complaint, contain no such statement, instead listing specific chapters and verses as the basis for his religious accommodation request. *See* doc. 19-1; doc. 19-4.

[4] To be clear, "sincerity is distinct from reasonableness," and the Court does not doubt the sincerity of Williams' faith. *New Doe Child #1 v. Cong. of United States*, 891 F.3d 578, 586 (6th Cir. 2018).

> different from the personal qualifications of those who ship, deliver, unpack, prepare, cook, and serve the kosher meals to provided inmates at CCI.
>
> In preparing both the vegetarian/vegan meals and kosher meals served at CCI, it is necessary for the food service workers, themselves, to personally touch the refrigerator, the freezer, the dishwasher, the food wrappings, the fruit and vegetables, the pots, the pans, the cooking utensils, the containers, the microwaves, the ovens, and the trays.

Doc. 87-2, # 784. Based on Tatman's representations, Williams' requirement that "scripturally clean" foods must be prepared by those who follow "the same words of Yahweh," is no more accommodated by kosher meals than by vegetarian or vegan meals.[5] Williams does not dispute these facts regarding meal preparation at CCI.[6]

Williams' belief that the preparation of the kosher meals is "closer" to what his faith requires does not create a genuine dispute of material fact. Even if Williams' proved as much at trial, the fact would remain (per Williams' own admission, as well as the cosmically distant goalposts set by "Yahweh Said") that the kosher meals do not suffice. Therefore, because

---

[5] Though Williams characterizes kosher meals as the "closest" accommodation of his religious exercise, elsewhere he suggests (and his materials support) that whether something is "scripturally unclean" is not a matter of degree—i.e., there is nothing to support the notion that Williams' religious exercise would be accommodated by swapping "unclean" vegetarian/vegan meal options with kosher meals which are somehow less "unclean." *Cf.* doc. 79, # 714 ("my accommodation plainly stated that I need food in line with the Torah, not slightly in line but in line."); *but see supra*, n.3 (explaining that his accommodation requests did not state such a need, plainly or otherwise); *see also* doc. 53, # 458 ("Anything that an unclean person touches becomes unclean, and anyone who touches the unclean becomes unclean.") (quoting Numbers 19:22). Regardless, even if the Court could determine a quantum of uncleanliness that would substantially burden Williams' religious exercise, the difference of degree would be entirely speculative, given the unknowability of the extent to which anybody who handles his food follows the every word of "Yahweh Said."

[6] Williams sometimes characterizes his request as for "Kosher Meals that are untouched by staff and sealed up." Doc. 97, # 892. This does not solve Williams' problem, as he cannot show that the preparation and sealing of such a meal would be done by "scripturally clean" individuals, a reality which Williams' appears to acknowledge with his concession that kosher meals "are not sufficient," and his belief that his only means of scripturally clean eating requires him to "sacrifice [his] own food, and grow his own vegetation, and allow the land to keep the sabbatical year." Doc. 97, # 889.

providing a kosher meal would not accommodate Williams' religious exercise, denial of a kosher meal does not substantially burden his religious exercise. Williams' objections, and his submission of "Yahweh Said," do not change this conclusion.

Because Williams cannot, as a matter of law, show that the denial of his kosher meal request substantially burdened his religious exercise, he cannot prevail on his RLUIPA claim. And because RLUIPA provides greater protection—i.e., is the lower hurdle to clear—his First Amendment free exercise claim must fail as well.

### CONCLUSION

For the reasons stated above, the Court **OVERRULES** Williams' objections (doc. 94) and **ADOPTS** the Report and Recommendations (doc. 93). Therefore, the Court **GRANTS** Davis' motion for summary judgment (doc. 78) and **DENIES** Williams' motion for summary judgment (doc. 77). Furthermore, the Court **GRANTS** Williams' second motion to amend his objections (doc. 97), as the Court considered his amended objections filed therewith. The Court **DENIES** Williams' first motion to amend (doc. 95) as moot.

Accordingly, Williams' other pending objections (doc. 53 and doc. 66) are **OVERRULED** as moot. The Court **ADOPTS** the R&R (doc. 45) regarding Williams' motion for injunctive relief (doc. 41) and therefore **DENIES** said motion as moot. The Court further **ADOPTS** the R&R (doc. 65) regarding Williams' motion for joinder (doc. 57) and therefore **DENIES** said motion as moot.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: June 9, 2025

[8]